**Murray GRAYSON and Southern Freightways, Inc., a corporation, Appellants,**

**v.**

**Harold E. WILLIAMS, Appellee.**

**No. 5746.**

United States Court of Appeals
Tenth Circuit.

May 21, 1958.

J. J. Hickey, Cheyenne, Wyo. (Norman B. Gray, of Ellery, Gray & Hickey, Cheyenne, Wyo., was with him on the brief), for appellants.

Carleton A. Lathrop, Cheyenne, Wyo. (Carl L. Lathrop and James A. Tilker, Cheyenne, Wyo., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, United States Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Harold E. Williams against Murray Grayson and Southern Freightways, Inc., for damages arising out of the collision of a truck driven by Williams and one driven by Grayson, as an employee of Southern Freightways, Inc. Trial was had to a jury which returned a verdict for plaintiff upon which judgment was entered.

The collision occurred about 4:00 a. m. on April 5, 1956. At the time, Williams was driving a truck owned by the Union Pacific Railroad in an easterly direction toward Cheyenne, Wyoming. The truck operated by Grayson was traveling easterly along the same highway and was operated by him as an employee and agent of Southern Freightways and was being operated in the course of his employment at the time of the accident. Plaintiff's cause of action was predicated upon the allegation that Grayson negligently drove his truck into the rear of plaintiff's truck; that he operated his truck at a high, dangerous and excessive rate of speed; that he was negligent in not having his truck under control, and in failing to keep a proper lookout. The only negligence charged against Southern Freightways was that imputed by law from the negligent acts, if any, of its employee while engaged within the scope of his employment. Defendants denied negligence on their part and affirmatively pleaded contributory negligence on plaintiff's part in that his truck was at least partially on the wrong side of the highway.

A number of assignments of error are urged for reversal which it will be necessary to consider. It is contended that prejudicial error was committed in admitting plaintiff's exhibit 29. Exhibit 29 was a large diagram portraying in plat form the scene of the accident. There is also claimed prejudicial error on the court's refusal to admit in evidence appellant's exhibit A, as originally presented.

Exhibit 29 was prepared in large part from defendant's exhibit A. Exhibit A was the official plat prepared by Sgt. Schwarting, a Wyoming highway patrolman, and was made pursuant to a statutory duty to diagram accidents on Wyoming highways. The objection to exhibit 29 was that no proper foundation of accuracy or verification had been laid for it and that it contained excerpts of the official plat favorable to appellee, and that such use of a public record was improper.

 No attempt was made to draw exhibit 29 to exact scale nor was it intended to accurately reflect official exhibit A. It was intended as a fair representation of the road conditions and skid marks found at the scene of the accident. An examination of the record supports the conclusion that it did fairly represent conditions at the scene of the accident. The general rule is that an illustrative diagram intended to portray existing facts may be employed if it is a correct portrayal of existing facts. This is so no matter by whom the diagram is made, so long as the trial judge is satisfied that it is a correct portrayal of facts sought to be established.[1] We think exhibit 29 met the test of the rule and was properly admitted.

It is urged that the court erred in refusing to admit appellants' exhibit A, as originally offered. Exhibit A, as originally submitted, in addition to showing the highway, skid marks and the position of the trucks as they came to rest, contained the conclusions of the patrolman as to the point of impact of the vehicles at the time of the accident, and the assumed pathway of the vehicles subsequent to the accident. The deleted portions represented the patrolman's conclusions as to what occurred from the facts as he saw and recorded them on the plat.

 It is conceded that Sgt. Schwarting had many years of experience investigating accidents in his capacity as a highway patrolman and qualified as an expert witness relative to auto accidents. The general rule is that expert testimony or conclusions to be drawn from the facts are inadmissible in cases where the normal experience and qualification of laymen jurors enables them to draw proper conclusions from given facts. It is only in those cases where such experiences do not enable laymen to reach correct conclusions that experts may be called upon to draw conclusions from technical experience or skill in a special field. This rule was decided by the Tenth Circuit in Nelson v. Brames, 241 F.2d 256, a Wyoming case. See also E. L. Farmer and Company v. Hooks, 10 Cir., 239 F.2d 547. This is also the rule stated by the Wyoming Supreme Court in Macy v. Billings, 74 Wyo. 404, 289 P.2d 422, 424. The court, although the statement is somewhat in the nature of dictum, quoted with approval from the authorities as follows:

"* * * 'Normally, expert testimony is inadmissible to show how and where an accident took place, or the position of the automobiles.' * * * "

All the physical facts were shown on appellants' exhibit A. They were such as are within the experience of ordinary intelligent persons. The jurors were competent to draw their own conclusions flowing therefrom unaided by the opinion of experts. The court did not abuse its discretion in deleting the Sergeant's conclusions as to what occurred from the

1. 9 A.L.R.2d 1060 § 9.

exhibit portraying the physical facts before admitting it into evidence.

It is urged that the court erred in refusing to give appellants' instruction to the effect that if the jury found that appellee was driving his truck astride the center line of the highway at the time of the accident that such fact would constitute negligence per se. Wyoming has a statute which provides that "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, * * *".[2] It is a misdemeanor for any person to violate any of the provisions of the Act.[3] The court instructed the jury,

> "In connection with this statute, I charge you that said statute was applicable to the highway on which this accident occurred, and if you find from a preponderance of the evidence that the plaintiff, Harold E. Williams, at the time of the accident was operating the truck of his employer in such a manner that a portion of said truck was in the left half of the roadway and across the center line, you may consider this element as a circumstance in determining the question of contributory negligence. And you are instructed if you further find that such negligence, if any, contributed to plaintiff's injury and damage, then the plaintiff cannot recover and your verdict must be for the defendant."

Appellee's position is that under Wyoming law violation of a traffic law only constitutes evidence of negligence. No Wyoming case squarely answering this question has been found. In Hester v. Coliseum Motor Company, 41 Wyo. 345, 285 P. 781, 784, the court quoted from the authorities holding that by the great weight of authority a violation of a traffic regulation was "negligence per se." But with respect to the issue of negligence in the case the court instructed the jury that such violation "whether

they be of the state or municipality, are at least evidence of negligence."

In Blessing v. Pittman, 70 Wyo. 416, 251 P.2d 243, 250, the court stated that. "Failure to observe statutory requirements has been held to be negligence per se." But the decision did not turn upon whether the statutory violation was negligence per se or only evidence of negligence. It was stated that a statutory violation made the offender liable for " * * * damages proximately caused by reason thereof."

Wallis v. Nauman, 61 Wyo. 231, 157 P.2d 285, 289, arose under a statute making it the duty of a driver of an automobile to remain on his side of the road when meeting a vehicle traveling in the opposite direction. The court held that driving on the left-hand side of a street or in the center thereof is not of itself negligence, since rules requiring operation of automobiles on the right side of a roadway do not contemplate strict compliance therewith except when an automobile passes another coming from the opposite direction. It was after this decision that the statute in question was passed. It is of interest to note that in the Wallis case the Wyoming Court quoted from a Maryland case construing the duty of a vehicle operator under a statute substantially identical with the present Wyoming statute in which the Maryland Court said [Kelly v. Huber Baking Co., 145 Md. 321, 125 A. 782], " 'It has been held that one who violates this statute does so at the risk of being held for negligence where collision and resulting injuries are directly and proximately caused by such violation.' " and that " 'the presence of defendants' automobile on the left side of the road, * * * would constitute evidence of negligence.' "

It would seem that while the Wyoming Court has not drawn a clear distinction between the terms negligence

2. Wyoming Compiled Statutes, 1945, 1957 Cum.Supp. § 60–643.

3. Wyoming Compiled Statutes, 1945, 1957 Cum.Supp. § 60–747.

per se and evidence of negligence, it is nonetheless committed to the doctrine that a violation of a traffic law or regulation will impose liability only when it is the proximate cause of the resulting injuries.[4] The court did tell the jury that the statute was applicable, and in effect told that if it found plaintiff violated the statute the jury should consider it as a circumstance establishing contributory negligence. This is manifest from its statement that if the jury found "that such negligence, if any"—that is, if the plaintiff was in the wrong lane—"contributed to plaintiff's injury and damage, then the plaintiff cannot recover." In our view, it is immaterial whether a violation of a traffic regulation constitutes negligence per se or only evidence of negligence. The decisive factor is whether such violation contributed to and was the proximate cause of the injury suffered. We think the court's instructions fairly advised the jury to this effect.

Complaint is made of the court's instruction telling the jury that if it found for the plaintiff he was entitled to recover the reasonable value of medical and hospital expenses including the charges of special nurses, even though the special nurses were paid for by the Union Pacific Railroad Hospital Association. It is well established that plaintiff at the time of the accident was a member of an employees' hospital association and that he had contributed regularly to the association during his employment with the Union Pacific Railroad. The association fund received no contributions from the Railroad and was supervised by labor organizations of the railroad employees. Plaintiff's hospital bills totalled $7,776.03. Of this, $3,960.03 for special nurses had been paid by the hospital association. The hospital and doctor expenses at the time of the trial had not been paid, but had been billed to plaintiff, and there was evidence to the effect that these were plaintiff's obligations and not covered by the hospital association. Thus the issue

narrows down to the question of whether it was proper to instruct the jury that plaintiff's damages would include the nursing charges even though they were paid by the association.

Again no Wyoming decision has been found which has squarely passed upon this question. Appellants rely upon Templar v. Tongate, 71 Wyo. 148, 255 P. 2d 223, and Hunt v. Thompson, 19 Wyo. 523, 120 P. 181, to sustain their contention. But neither of those cases is in point. In the Tongate case, the defendant himself had paid the special damages consisting of doctors' bills and nursing bills and the court quite properly held that plaintiff was not entitled to recover from the defendant twice for one item of damages with which he was charged. In the Hunt case, the court merely made a general statement in an action for damages for wrongful taking under a writ of replevin, of the principle underlying the rules of compensatory damages. Nothing there stated lends support to appellants' contention.

Where a part of a wrongdoer's liability is discharged by payment from a collateral source, as here, the question arises who shall benefit therefrom, the wrongdoer or the injured person. No reason in law, equity or good conscience can be advanced why a wrongdoer should benefit from part payment from a collateral source of damages caused by his wrongful act. If there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his full responsibility for his wrongdoing. We think we may judicially note that notwithstanding that the law contemplates full compensation, incidental losses and handicaps are suffered in a great number of personal injury cases which are not, and cannot be, fully compensated.

We think this conclusion is supported by the great weight of authority.

---

4. This is the construction we have placed upon Wyoming law. See Nelson v. Brames, 10 Cir., 241 F.2d 256, and Nelson v. Brames, 10 Cir., 253 F.2d 381.

Hudson v. Lazarus, 95 U.S.App.D.C. 16, 217 F.2d 344, held that an injured person may usually recover in full from a wrongdoer regardless of anything he may have received from a collateral source, and it is stated that the best interests of society as well as the purposes of the parties are likely to be better served if the injured person benefits rather than the wrongdoer benefitting.[5]

The judgment is challenged on the further ground that the court erred in allowing admissions of appellant Grayson to be admitted in evidence against Southern Freightways, Inc. Three persons visited Grayson in the hospital several hours after the accident. They asked him if appellee's truck was in its proper lane. Lockhead testified in substance that Grayson replied that it was and stated further that he didn't see the Union Pacific truck until the last minute and couldn't avoid striking it. Minardi testified that he said both trucks were in their proper lane and "I just didn't see the truck in time enough to avoid striking it." Sgt. Schwarting testified that Grayson said he didn't see the other truck until it was right on him; that he cramped his wheels to the left but was too late and they hit. Objection was made by Southern Freightways to the admission of this testimony on the ground there was no showing "that it is within the res gestae" or "that it was within the scope of his authority."

The court apparently admitted the evidence against Southern Freightways on the theory that Grayson was "acting within the scope of his authority or in line of duty" and, therefore, could bind his employer. Little attention will be given the res gestae rule in the resolution of this question, since it was not the basis of the court's ruling. It may be said in passing it is doubtful whether statements made several hours after the happening of an event are admissible as part of the res gestae, in the absence of a strong showing of the state of mind of the declarant.

There is as much confusion in the law with respect to whether admissions by an agent are made within the scope of his employment as there is with respect to the res gestae rule. Of course, express authority to make admissions will rarely be found in a contract of employment. There is authority for holding that admissions made by an agent while acting in the scope of his employment and concerning the subject matter of his employment are binding on the principal. The reason for the rule is stated in Wigmore on Evidence, as follows: " * * * and yet it is absurd to hold that the superintendent has power to make the employer heavily liable by mismanaging the whole factory, but not to make statements about his mismanagement which can be even listened to in court; * * *." 4 Wigmore on Evidence (3d Edition, 1940) § 1078, p. 121, n. 2.

This question was considered by Judge Morris in the United States District Court, District of Columbia, in Martin v. Savage Truck Line, 121 F.Supp. 417, upon facts indistinguishable from the facts in this case. It was there held that an employee truck driver who had been involved in a collision would be deemed within the scope of his employment in speaking of the accident shortly after its occurrence, and his statement that he had been driving at an excessive rate of speed would be admissible against the corporate employer's interest, regardless of whether the statement fell within the res gestae rule. The court's reasoning appeals to us as being sound.[6]

---

5. To the same effect see Sainsbury v. Pennsylvania Greyhound Lines, Inc., 4 Cir., 183 F.2d 548, 21 A.L.R.2d 266; Standard Oil Co. of California v. United States, 9 Cir., 153 F.2d 958; 15 Am. Jur. Damages § 198.

6. The court in its opinion, at page 419, said, "To say, in these circumstances, that the owner of a motor truck may constitute a person his agent for the purpose of the operation of such truck over public streets and highways, and to say at the same time that such operator is no longer the agent of such owner when an accident occurs, for the purpose of truthfully relating the facts concern-

But there is yet another reason why we think the judgment must be affirmed. This is not a case in which the corporation is charged with wrongful acts of commission or omission which would make it liable, such as putting defective equipment upon the highway. It is charged with no wrongdoing other than the wrongdoing of its agent, Grayson. It is liable only if Grayson, acting within the scope of his employment, was guilty of conduct which would impose liability upon him. Then by operation of law alone and without more, liability is imposed upon it. The liability of Grayson depended upon facts; that of the company depended upon the applicable law when the facts were once established. The rule is well stated in 35 Am.Jur. § 543, page 973, as follows:

" * * * By legal intendment, the act of the employee becomes the act of the employer, the individuality of the employee being identified with that of the employer. The latter is deemed to be constructively present; the act of the employee is his act, and he becomes accountable as for his own proper act or omission. The law imputes to the master the act of the servant, and if the act is negligent or wrongful, proximately resulting in injury to a third person, the negligence or wrongful conduct is the negligence or wrongful conduct of the master for which he is liable, * * * ."

In order to find Southern Freightways, Inc. liable because of Grayson's acts, it was necessary to establish two facts; (1) that Grayson was acting within the scope of his employment; and (2) that he was guilty of actionable negligence. The first fact was admitted. Grayson's admissions against his interest were properly admitted to establish his negligence. These admissions constituted evidence from which the jury could find together with other facts that he was liable for the accident. Any facts properly admitted to establish his liability were sufficient, without more, to impose liability upon his employer. Had the court sustained the motion and instructed the jury that the admissions were limited to a consideration of Grayson's liability and could not be considered in determining liability of Southern Freightways, the result would have been the same. The court might well have instructed the jury, in fact it did instruct the jury in substance, that no acts of negligent conduct were charged against Southern Freightways other than Grayson's negligence; that it was sought to be held liable only for acts of its employee, Grayson, committed in the course of his employment; and that if the jury found that he was engaged in the course of his employment and was negligent, and that such negligence caused the collision, then the jury should return a verdict against Grayson because of his negligence and against Southern Freightways, even if there was no evidence of negligence other than Grayson's negligence against it, because in law it would be liable for the actionable negligence of its employee committed in the course of his employment.

Let us assume that the court had instructed the jury that it could consider

ing the occurrence to an investigating police officer on the scene shortly thereafter, seems to me to erect an untenable fiction, neither contemplated by the parties nor sanctioned by public policy. It is almost like saying that a statement against interest in the instant case could only have been made had the truck been operated by an officer or the board of directors of the Corporation owning the truck; and trucks are not operated that way. To exclude the statement of driver of the truck as to the speed of the

truck at the time of the collision, which was not only clearly excessive in the circumstances, but even greater than the speed limit permitted on the highway between intersections, would be to deny an agency which I believe inherently exists regardless of whether the statement is made at the moment of the impact, or some minutes later to an investigating officer, or other authorized person. The motion will be denied." See also Whitaker v. Keogh, 144 Neb. 790, 14 N.W.2d 596.

Grayson's declarations only in determining his negligence and together with a general verdict had submitted these three special questions to the jury.

1. Was plaintiff guilty of contributory negligence?

2. Was Grayson guilty of negligence?

3. Was his negligence the proximate cause of the accident?

If the jury had answered "no" to the first question and "yes" to questions 2 and 3, and then had returned a general verdict against Grayson and a general verdict in favor of Southern Freightways, Inc., would not the court have been required to sustain a motion for judgment against Southern Freightways, Inc., notwithstanding the general verdict in its favor? To hold otherwise would be to make a mockery of the law, because it would mean that the agent had been found guilty of actionable negligence, upon competent evidence, while acting within the scope of his employment, yet his principal had escaped.

Our conclusion is that the appeal presents no reversible error and the judgment is, therefore, affirmed.