Michael D. KICKHAM, Plaintiff-Appellant,

v.

Kenneth CARTER, Defendant-Respondent,

Royal Papers, Inc., a Corporation, Defendant-Respondent,

Royal Crown Bottling Corporation of St. Louis, a Corporation, Defendant-Respondent.

No. 47677.

Supreme Court of Missouri.

Division No. 1.

April 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied May 9, 1960.

84

James W. Jeans, Gray & Jeans, St. Louis, for plaintiff-appellant.

William H. Tombrink, Strubinger, Tudor, Tombrink & Wion, St. Louis, for defendant Kenneth Carter.

Heneghan, Roberts & Cole, George E. Heneghan, St. Louis, for defendant-respondent, Royal Papers, Inc.

Hocker, Goodwin & MacGreevy, John M. Goodwin, Donald J. Stohr, St. Louis, for defendant-respondent, Royal Crown Bottling Corp. of St. Louis.

HOLMAN, Commissioner.

In this action plaintiff sought to recover damages in the sum of $60,000 for personal injuries alleged to have been sustained by him in an intersectional collision between his car and one driven by defendant Kenneth Carter. Carter was a salesman for Royal Papers, Inc. (hereinafter referred to as "Royal Papers") which corporation was also made a defendant. The third defendant was Royal Crown Bottling Corporation of St. Louis (hereinafter referred to as "Royal Crown"). At the conclusion of plaintiff's evidence the court sustained the motion for a directed verdict filed by defendant Royal Papers. The jury returned a verdict for plaintiff against defendant Carter in the sum of $12,500 and found in favor of defendants Royal Crown and (as directed) Royal Papers. Plaintiff has appealed and here contends that the trial court erred (1) in directing a verdict in fa-

vor of Royal Papers, (2) in giving Instruction No. 5 at the request of defendant Royal Crown, and (3) in the admission and exclusion of evidence relating to plaintiff's damages and in giving Instruction No. 12 upon that issue. He seeks a new trial as to defendants Royal Papers and Royal Crown and a new trial on the issue of damages as to defendant Carter.

This is the second appeal in this case. See Kickham v. Carter, Mo.Sup., 314 S.W. 2d 902. In the first appeal there were contentions that plaintiff failed to make a submissible case and also was guilty of contributory negligence as a matter of law, and hence it was necessary, in that opinion, for us to set out in detail the facts relating to the manner in which the collision occurred. Those issues are not presented upon this appeal and hence a brief statement of the facts will suffice. We refer readers to our first opinion for a complete factual statement.

Plaintiff's case was submitted against Carter upon his hypothesized humanitarian negligence in failing to stop his automobile and thus to have avoided the collision. Carter was a salesman for Royal Papers and the alleged liability of Carter's said employer was predicated upon the doctrine of respondeat superior. In our first opinion we expressed the view that the evidence at the first trial had not been sufficient to support the submission of the issue as to the liability of Royal Papers, but since we were of the opinion that the evidence had not been fully developed on that issue we held that the case should be retried as to said defendant in order to afford plaintiff the opportunity of presenting additional evidence in an effort to prove that Royal Papers was responsible for Carter's actions on the occasion in question. As indicated, on the second trial, the trial court was of the opinion that the evidence was not sufficient to support a submission of that issue and accordingly directed a verdict for said defendant. The alleged liability of defendant Royal Crown was based upon the violation of certain ordinances of the City of St.

Louis in that the route salesman had parked one of said defendant's trucks either in the intersection or "on a cross walk" at the southeast corner of the intersection. The causal connection of said negligence is evidently based upon the contention that, as so parked, the truck obstructed the view of plaintiff as his vehicle approached the intersection.

The collision occurred on March 16, 1956, at about 10:30 a. m. at the intersection of Ninth, a north-south street, and Destrehan, an east-west street, in St. Louis, Missouri. Plaintiff was driving northwardly on Ninth at a speed of 25 m. p. h. As he neared the intersection his view of westbound traffic was obscured by the parked Royal Crown truck. Carter, driving west on Destrehan, stopped at a stop sign before starting to cross Ninth. Plaintiff first saw Carter's car when it was seven or eight feet into Ninth "edging out" into the intersection at a speed of three to five m. p. h. Plaintiff, then 30 feet away, did not apply his brakes but sought to avoid a collision by honking his horn and swerving to the left. He swerved to the left of the center line and the front of his car "got past" but his right rear fender was caught by the right front bumper guard of the Carter car and plaintiff was "wrenched around in the car." Carter testified that he had stopped his car before the collision. He also stated that plaintiff's car was moving at a speed of 40 m. p. h.

Plaintiff did not think he had been injured in the collision. Each driver gave the other his name and address and plaintiff went on to work. Later in the day his back "felt a little funny" and the next day, Saturday, he developed "tremendous pain" in his low back radiating down his left leg. His condition did not respond to treatment and he underwent an operation on July 21, 1956, for the removal of a ruptured disc at the L–3, L–4 level. He lost 28 weeks' work during the year following the collision. His work as a stereotyper ordinarily required him to lift lead plates weighing about 45 pounds. Since his operation he has been

unable to lift those plates. He has been able to continue working because fellow employees have been doing the lifting for him. According to favorable medical testimony he has sustained permanent partial disability as a result of injuries sustained in the collision.

We will first consider the contention of plaintiff that the court erred in directing a verdict for defendant Royal Papers. In our determination of the question concerning the sufficiency of the evidence to support the submission of the issue as to said defendant's responsibility under the doctrine of respondeat superior we will consider the evidence in the light most favorable to plaintiff. The evidence on that issue was given by defendant Carter and Dennis Aubuchon, a vice-president of Royal Papers, both of whom were called by plaintiff. There is no conflict in that evidence and our task, as stated, is to determine the legal sufficiency thereof.

Kenneth Carter, on the dates mentioned, was living with his stepfather, Joseph Aubuchon, president of Royal Papers. In May 1955, when about 23 years of age, he went to work for Royal Papers in the warehouse. Six months later he became an "outside salesman" for the company. The company sells all types of paper products such as cups, napkins, towels, etc. No territory is assigned to a salesman. The only restriction is that if a salesman is calling on an account regularly, another salesman is not supposed to call on that account without his consent. Carter's stepfather gave him some instructions and he also learned the work by going with other salesmen to make calls. He owned the car he was driving at the time of the collision, although salesmen for Royal Papers were not required to have a car and the company does not pay any of the expense of operating the same. They are at liberty to walk or use public transportation in calling upon their customers. Mr. Aubuchon testified that salesmen were asked to telephone the office of the company about four times a day in order to receive messages and other information helpful in their work. He stated that if a customer calls the office and wants to talk with a salesman the switchboard operator would give the message to the first salesman who called thereafter and then it was up to the particular salesman as to whether he would accept or reject the call. He also stated that sales meetings were held on an average of twice a month, generally for the purpose of introducing new products, but that salesmen were not required to attend these meetings. He said that the only expense allowed the salesmen was that if a salesman took a customer out for an evening's entertainment the company would pay one half of that expense.

Carter testified that he was paid strictly on a commission basis and that the company did not deduct any withholding tax or social security from his earnings. He stated that he was not required to work any particular hours or to call on any particular customers; that he usually went to the office once each day to get mail and receive any messages that might be left for him; that he had a desk in the office and stenographic services were available; that he ordinarily went to the office late in the afternoon when it was too late to make calls; however, on the morning of the collision he had made some calls at Baden and was intending to work around Kirkwood in the afternoon and, since that was near his home, he would not return to the office on that Friday afternoon. Consequently he decided to call at the office before noon and intended to receive his mail and messages and then go to lunch with someone in the office before proceeding to Kirkwood. He was on his way from Baden to the office at the time of the collision.

In regard to the operation of his car Carter testified as follows:

"Q. Now, on the use of your automobile —you testified you were not required to have it; was there any restriction indicated to you, or anything, by anybody connect-

ed with Royal Papers as to the operation of your automobile? A. No, sir.

"Q. That was your business alone, was it? A. Yes, sir.

"Q. In other words, you could use the automobile, or not, or you could go anywhere you wanted to, is that right? A. That's right. * * *

"Q. I will ask you this: On that March 16, 1956, had you received any instructions from anybody connected with the management of Royal Papers Company about where you were to go and where you were not to go? A. No, sir."

Defendant Carter testified further that the company furnished him with Dun & Bradstreet credit information, personal business cards, order blanks, price lists, and samples of the products. He stated that when he made a sale he ordinarily telephoned the order into the office and the office would then deliver the products and bill the customer for the price thereof. There was evidence that if a customer failed to pay his bill the salesman might be asked to call upon him and "see why it had not been paid." No written contract was entered into between the company and its salesmen.

Plaintiff alleged that in the operation of the automobile at the time of the collision Carter was acting as the "agent and servant for defendant Royal Papers." In Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S.W.2d 252, 256, 116 A.L.R. 1381, we stated that "There should be a clear distinction between an agent who is employed and authorized to bring about only contractual relations between his principal and others on his own initiative and by his own methods, and a servant or employee who is employed to perform physical service within the time and in the manner his employer might direct. The American Law Institute's discussion of this rule states: ' * * Those rendering service but retaining control over the manner of doing it are not servants. * * * An agent who is not sub-ject to control as to the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results.' 1 Restatement of Agency § 485."

In the instant case it would seem that the basic question is whether Royal Papers controlled or had the right to control the manner in which Carter conducted the business of selling its products and the means he used in traveling over the area in which he worked and his means of transportation in going to and from the office of the company. In Restatement, Agency 2d, § 220, will be found a definition of "servant" and certain suggested facts to be considered in determining whether one acting for another is a servant or an independent contractor. The following is one of the illustrations thereunder: "P employs a salesman who agrees to give full time to the work but furnishes his own car, is paid by commission and can call on those whom he pleases. It is inferred that the salesman is not P's servant." Also, in 60 C.J.S. Motor Vehicles § 451, p. 1156, it is said that "A salesman who works entirely on a commission basis, the employer reserving only general control over him, as, for example, with respect to the territory and the price at which he may sell, he being otherwise in control of the methods and means which he will employ to do his work, as a general rule, is held to be an independent contractor."

We have concluded that the plaintiff failed to present evidence which would tend to prove that Royal Papers had the right to control the actions of Carter and hence it follows that the trial court ruled correctly in directing a verdict for said defendant. In arriving at that conclusion we think it is especially significant that (1) Carter owned the car and paid the expenses of its operation. (2) He could choose any mode of transportation he desired. (3) He could use his own methods in effecting

a sale and could call on any prospective customer he chose except the established customer of another salesman. (4) He could fix his own hours of work, choose his own territory, and the employer could not direct that he call on any particular customer. Our ruling is supported by the following authorities: Vert v. Metropolitan Life Ins. Co., supra, Riggs v. Higgins, 341 Mo. 1, 106 S.W.2d 1, Stokes v. Four-States Broadcasters, Inc., Mo.Sup., 300 S.W.2d 426, Glynn v. M. F. A. Mut. Ins. Co., 363 Mo. 896, 254 S.W.2d 623, 36 A.L.R.2d 256, Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 108 S.W.2d 58, Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726, Pfeifer v. United Bakers Supply Co., Mo.App., 160 S.W.2d 795, and 5A Am.Jur., Automobiles and Highway Traffic, § 648, p. 645.

The cases cited by plaintiff in support of his contention that he made a submissible case against Royal Papers are all distinguishable upon the facts. In Burgess v. Garvin, 219 Mo.App. 162, 272 S.W. 108, the evidence was held sufficient to warrant a finding that the employer had the right of control over its salesman primarily because the salesman was directed in the manner of taking security payable to the employer for the unpaid purchase price of products sold. Mattan v. Hoover Co., 350 Mo. 506, 166 S.W.2d 557, was a case wherein it appeared that the employer had the right to direct the salesman in the manner of endeavoring to make a sale, to direct him in regard to where he should canvass, and to designate persons to whom he should demonstrate the product. In Hammonds v. Haven, Mo.Sup., 280 S.W.2d 814, 815, 53 A.L.R.2d 992, we ruled that the evidence justified the inference that the employer had the right to control a sales manager who was returning home from a "meeting of the salesmen" which he had called upon the order of his employer.

We will next consider the contention of plaintiff that the court erred in giving Instruction No. 5 at the request of Royal Crown. That instruction reads as follows: "The court instructs the jury that if you find from the evidence that on the occasion mentioned in evidence plaintiff, Michael D. Kickham, drove his automobile northwardly on Ninth Street toward and into the intersection of Ninth and Destrehan at a speed of 25 miles per hour, at a time when he could not see whether there was traffic proceeding into said intersection on Destrehan, and that in so doing he failed to exercise the highest degree of care for his own safety, and, if you further find that by slackening his speed and stopping his automobile before entering said intersection, plaintiff, Michael D. Kickham, could have avoided the collision with the automobile driven by defendant, Kenneth Carter, then you are instructed that plaintiff was negligent, and, if you further find that such negligence of plaintiff, Michael D. Kickham, if any, caused or contributed to cause the automobile collision between plaintiff, Michael D. Kickham, and defendant, Kenneth Carter, then you are instructed that plaintiff cannot recover against the Royal Crown Bottling Company, and your verdict should be in favor of the defendant, Royal Crown Bottling Company of St. Louis, under Instruction No. 4, and this is so even though you may also find that the defendants, Kenneth Carter and/or Royal Crown Bottling Company of St. Louis, were also guilty of some negligence as submitted to you in other instructions."

It will be noted that the facts hypothesized in the instruction are admitted by plaintiff. Plaintiff testified that he approached and entered the intersection at a speed of 25 miles per hour and that as he approached the intersection he could not see traffic approaching from the east on Destrehan because of the position of the parked truck. He also concedes that his brakes were in good condition and that he could have avoided the collision by "slackening his speed and stopping his automobile before entering the said intersection." However, the fact that plaintiff had admitted all of the hypothesized facts did not cause the instruction to be the equivalent of

a directed verdict for defendant Royal Crown because the jury was required to find that the manner in which plaintiff admittedly operated his car constituted negligent operation, that is to say, the jury was required to find (1) that plaintiff's hypothesized manner of approaching and entering the intersection constituted a failure "to exercise the highest degree of care," i. e., negligence, and (2) that such negligence "caused or contributed to cause the collision" as a predicate to a verdict for such defendant. In his brief plaintiff states: "It is plaintiff's contention that any instruction which seeks to impose the guilt of negligence upon the plaintiff must incorporate in it a finding by the jury that plaintiff could have seen and realized that the parked truck obscured his vision and that thereafter he could have taken some preventative measure to have avoided the collision." Stated somewhat differently, it would seem that the specific question presented is whether the instruction was reversibly erroneous in failing to contain the additional hypothesis that at the time plaintiff saw or should have seen that the truck obscured his vision of traffic entering the intersection from Destrehan there remained time in which he could have taken preventative action to avoid the collision. Plaintiff cites the case of Stakelback v. Neff, Mo.App., 13 S.W.2d 575, and cases following it. Those cases are not specifically applicable here because they deal with an instruction which required action to avoid a collision with a car which defendant saw or should have seen and the instruction was held erroneous because it did not require a finding that there was apparent danger of a collision unless action was taken. But, as indicated, plaintiff seeks to apply the Stakelback rule to the instant instruction, by analogy, in regard to the situation concerning his discovery of the parked truck.

■ We do not agree with plaintiff's contention. The instruction submitted whether plaintiff was negligent in driving "toward and into the intersection * * *

at a speed of 25 m. p. h. at a time when he could not see whether there was traffic proceeding into said intersection on Destrehan." It seems clear to us that the instruction's hypothesis included plaintiff's inability to see for any reason, including the fact of the presence and the effect of the Royal Crown truck. There was no dispute about the fact that the parked truck was visible during plaintiff's approach to the intersection. Moreover, there was no dispute about the physical surroundings and very little conflict concerning any of the facts relating to the collision. The issue pertaining to plaintiff's contributory negligence was relatively simple. Therefore, under the circumstances here presented, it was sufficient that the instruction hypothesize, as it did, the ultimate facts essential to a finding that plaintiff was negligent, and there is no requirement that it hypothesize all evidentiary facts that might have had some relation to the situation. Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972. In determining whether the hypothesized essential facts constituted negligence, and, if so, whether such negligence contributed to cause the collision, the jury no doubt considered various relevant evidentiary facts in evidence which were not specifically hypothesized in the instruction. The additional facts which plaintiff contends the instruction should have hypothesized were evidentiary facts and it was not essential that they be specifically hypothesized in the instruction under review. Moreover, if those facts, as plaintiff contends, would have warranted a jury finding that plaintiff was not negligent, he should have offered an instruction which would have submitted that theory.

■ On direct examination plaintiff testified that his hospital bills amounted to about $400. On cross-examination, over objection of plaintiff, counsel was permitted to ask plaintiff if he had Blue Cross, and if any of his bills were paid by Blue Cross. In answer to those questions plaintiff testified that all of his hospital bills had been paid by Blue Cross. Plaintiff contends that

the trial court erred in admitting that evidence. No Missouri case has been cited which deals with the specific question presented, but the courts of this state have followed the general rule that insurance payments received by the plaintiff cannot ordinarily be set up by the wrongdoer in mitigation of damages. Baker v. Fortney, Mo. App., 299 S.W.2d 563; Wells v. Thomas W. Garland, Inc., Mo.App., 39 S.W.2d 409. It is our view that plaintiff was entitled to recover reasonable hospital expenses incurred as a result of injuries resulting from the negligence of defendant even though such expenses were actually paid by the Blue Cross organization in response to its contract with plaintiff and hence evidence of such payment was wholly immaterial in this action. Upon principle there would appear to be no logical reason for defendant to receive the benefit of hospitalization payments (in the nature of insurance) made by an organization such as Blue Cross to which plaintiff had no doubt made contributions in accordance with a membership agreement. While there is some division of opinion, we think our view is in accord with the weight of authority generally. See 15 Am.Jur. Damages, § 201, p. 617; 25 C.J.S. Damages § 99, p. 647; Clough v. Schwartz, 94 N.H. 138, 48 A.2d 921; Roth v. Chatlos, 97 Conn. 282, 116 A. 332, 22 A.L.R. 1554; Capital Products, Inc. v. Romer, 102 U.S.App.D.C. 279, 252 F.2d 843; and Grayson v. Williams, 10 Cir., 256 F.2d 61

Defendant Carter in his brief does not contend that the evidence was admissible but is content to briefly assert that the plaintiff was not prejudiced by the evidence as indicated by the fact that he received a substantial verdict. We do not agree. Errors of that nature are presumed to be prejudicial. Moreover, as a result of that evidence, plaintiff likely was prevented from recovering a $400 item and may have been prejudiced generally, in the eyes of the jury, because he attempted to recover an item which he later admitted he had not paid. We accordingly rule that the error was prejudicial to plaintiff.

Since this case will be remanded for a new trial we will briefly consider certain other contentions of error relating to the issue of damages that are likely to recur upon another trial. One such contention is that "the court erred in sustaining defendant's objection to plaintiff's offer of proof to the effect that William Wieseman, plaintiff's foreman, would testify that by reason of plaintiff's physical impairment he would be the first stereotyper employed at World Color Printing Company to be discharged in the event of a reduction of force." In the absence of any indication that plaintiff's discharge for the reason stated would result from anything other than the personal feeling or view of the foreman, we are of the opinion that the proffered testimony is too speculative and conjectural to be admissible. The court ruled correctly in excluding that testimony.

On direct examination plaintiff testified as follows:

"Q. Have you been to any other doctor since then for examination or treatment? A. Yes, that was Dr. Funsch.

"Q. You were sent out there by the defendant to be examined, is that right? A. Yes."

During the argument of plaintiff's counsel the following occurred:

"Another thing, about this medical situation, Mr. Kickham was examined by Dr. Funsch on behalf of the defendant, and Dr. Funsch wasn't here to testify, for the reason that he would probably say the same thing as Dr. Schaerer in regard to Mike Kickham—

"Mr. Tombrink (interrupting): Just a minute, I will object to that as to why Dr. Funsch did not testify.

"The court: Sustained.

"Mr. Jeans: Now, your honor, I believe the jury can infer that if Dr. Funsch—

"The court (interrupting): I am sorry."

Plaintiff contends that the court erred in preventing his counsel from commenting on the failure of defendants to produce Dr. Funsch and from presenting the argument that such failure would warrant an inference that his testimony would not aid the defendants. We agree with that contention. The argument that the failure of defendants to produce their examining physician would warrant an inference adverse to them would have been proper. Hamilton v. Ross, Mo.Sup., 304 S.W.2d 812. While the court interrupted plaintiff's counsel before he had made his position clear, it nevertheless is apparent that the nature of the argument he intended to make was similar to the argument discussed in Hamilton v. Ross, supra. The ruling complained of was error.

■ The next contention of plaintiff is that the court erred in giving Instruction No. 12, at the request of defendant Carter, which told the jury that the plaintiff was not entitled to recover for any impaired condition he may have had prior to the accident mentioned in evidence. Plaintiff says there was no evidence to support the giving of that instruction. In view of the fact that plaintiff experienced low "back trouble" in 1952 and 1954 and had undergone treatment therefor, we are of the opinion that the trial court did not abuse its discretion in giving a cautionary instruction such as the one complained of.

■ Plaintiff's counsel sought to prove by William Wieseman, plaintiff's foreman, that plaintiff had complained of pain in his back after the collision. An objection that the testimony involved a self-serving declaration was sustained. Plaintiff's final contention is that said ruling was erroneous. Plaintiff is supported by the case of

Jones v. Central States Oil Co., Mo.App., 170 S.W.2d 153, wherein the court ruled that such statements, although made to lay witnesses, are admissible. In so ruling the court pointed out that the statements must be complaints of pain being suffered at the time the statement is made and quotes from Greenleaf on Evidence wherein it is stated that such declarations are entitled to greater weight if made to a medical attendant but are not to be rejected if made to any other person. We accordingly rule that the testimony was admissible.

■ In conclusion plaintiff points out that two juries have found that defendant Carter was negligent and that the only complaints on this appeal which concern Carter relate to the issue of damages. He requests that the new trial as to that defendant be limited to that issue. Carter did not appeal from the judgment and, in his brief as a respondent, had not objected to plaintiff's request for a limited new trial. Section 512.160, subd. 3 RSMo 1949, V.A.M.S., provides that "no new trial shall be ordered as to issues in which no error appears." In the situation presented we can see no reason for denying plaintiff's request.

The judgment is affirmed as to defendants Royal Papers and Royal Crown. It is reversed and remanded for a new trial as to defendant Carter with the direction, however, that plaintiff's verdict against said defendant on the issue of liability be held in abeyance and the new trial be limited to the issue of damages.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.