Joan ISEMINGER and John Iseminger, Respondents,

v.

Deborah Kay HOLDEN, Appellant.

No. 59338.

Supreme Court of Missouri, En Banc.

Dec. 30, 1976.

Edgar S. Carrol, Warrensburg, for appellant.

J. Kirk Rahm, Warrensburg, for respondents.

MORGAN, Judge.

The application of appellant-defendant to have this cause transferred from the Kansas City District of the Court of Appeals having been sustained, we consider the same "as on original appeal." Mo.Const., Art. 5, Sec. 10.

Respondents-plaintiffs, husband and wife, filed suit wherein they alleged that defendant negligently caused her motor vehicle to strike the automobile in which plaintiffs were riding. Recovery was sought for personal injuries, loss of consortium and certain medical expenses. To establish the same, counsel for plaintiffs had four exhibits admitted and passed to the jury. The first page of the hospital record (Exhibit 2) had the following printed legend and (underlined) inserts:

| FAMILY NAME | FIRST NAME | | | | |
|---|---|---|---|---|---|
| Iseminger, L. | Joan | | | | |
| * | * | * | * | * | * |
| HOSPITALIZATION INSURANCE | | GROUP | CONTRACT # | | |
| 1. | | | | | |
| 2. BCBS Sub: John | | 0. Gr. 4825 | Cert. X86571 | | |
| 3. American Republic | | | | | |

During cross-examination of the husband, defendant's counsel was allowed to establish over objection that some if not all of the medical expenses of the wife had been paid by plaintiffs' hospitalization insurance companies, as reflected in the following dialogue:

Q. Now the hospital bills that you have indicated to the jury that you are obligated for; actually in truth and fact, you have insurance to cover those, don't you, Mr. Iseminger?

MR. RAHM: Your Honor—

MR. CARROLL: It is in evidence, Judge; it is in the hospital records.

THE WITNESS: No, sir; I didn't have enough money to pay them all.

Q. (By Mr. Carroll) I asked you if you had Blue Cross and Blue Shield and some other type of insurance?

MR. RAHM: Before you answer the question—

(THEREUPON, THE FOLLOWING DISCUSSION WAS HAD AT THE BENCH BETWEEN COURT AND COUNSEL, OUT OF THE HEARING OF THE JURY, TO WIT:)

MR. RAHM: Your Honor, it is my understanding that under the law that it does not matter if there might have been some collateral source or help on part of the bills and I understood at least part of these bills there was some applicable insurance coverage and I at this time ask that—I do object to the question for that reason; that it violates the collateral source rule.

MR. CARROLL: Your Honor, Mr. Rahm, put into evidence the admission sheet (sic) of the hospital which shows that Mr. Iseminger had this type of coverage. I think he's already placed it before the Jury.

THE COURT: Overruled.

Q. (By Mr. Carroll) So you did have that hospitalization coverage with Blue Cross and Blue Shield?

A. Yes, sir; I did.

Q. And you also have coverage with American Republic?

A. Yes, sir.

Q. So you had two policies covering these hospitalizations?

A. Yes.

Q. And did that pay all of the hospital bills?

A. To the best of my knowledge, it paid the hospital bills; yes.

Q. And some of Dr. Jones' bill, was that paid by Blue Cross?

A. I do not know.

Q. Has he billed you for this Six Hundred Seventy-one Dollars ($671.00) he talked about?

A. We have had a statement but I did not look at it myself, so I don't know the total amount.

MR. CARROLL: I believe that's all I have.

When the jury returned a verdict for defendant, plaintiffs moved for a new trial. The trial court sustained the motion after concluding that admission of evidence of payments of medical bills by the insurance companies was violative of the "collateral source doctrine." Defendant then appealed. We now affirm.

■■■ "Under the collateral source rule or doctrine, which is a well-established rule in the law of damages, a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged. This is an established exception to the general rule that damages in negligence actions must be compensatory." 25 C.J.S. Damages § 99(1), pp. 1011–1012. Such is the law in Missouri as declared in *Kickham v. Carter,* 335 S.W.2d 83, 89–90 (Mo.1960), to-wit:

On direct examination plaintiff testified that his hospital bills amounted to about $400. On cross-examination, over objection of plaintiff, counsel was permitted to ask plaintiff if he had Blue Cross, and if any of his bills were paid by Blue Cross. In answer to those questions plaintiff testified that all of his hospital bills had been paid by Blue Cross. Plaintiff contends that the trial court erred in admitting that evidence. No Missouri case has been cited which deals with the specific question presented, but the courts of this state have followed the general rule that insurance payments received by the plaintiff cannot ordinarily be set up by the wrongdoer in mitigation of damages. *Baker v. Fortney,* Mo.App., 299 S.W.2d

563; *Wells v. Thomas W. Garland, Inc.,* Mo.App., 39 S.W.2d 409. It is our view that plaintiff was entitled to recover reasonable hospital expenses incurred as a result of injuries resulting from the negligence of defendant even though such expenses were actually paid by the Blue Cross organization in response to its contract with plaintiff and hence evidence of such payment was wholly immaterial in this action. Upon principle there would appear to be no logical reason for defendant to receive the benefit of hospitalization payments (in the nature of insurance) made by an organization such as Blue Cross to which plaintiff had no doubt made contributions in accordance with a membership agreement. While there is some division of opinion, we think our view is in accord with the weight of authority generally. See 15 Am.Jur. Damages, § 201, p. 617; 25 C.J.S. Damages § 99, p. 647; *Clough v. Schwartz,* 94 N.H. 138, 48 A.2d 921; *Roth v. Chatlos,* 97 Conn. 282, 116 A. 332, 22 A.L.R. 1554; *Capital Products, Inc. v. Romer,* 102 U.S. App.D.C. 279, 252 F.2d 843; and *Grayson v. Willims,* 10 Cir., 256 F.2d 61.

Defendant Carter in his brief does not contend that the evidence was admissible but is content to briefly assert that the plaintiff was not prejudiced by the evidence as indicated by the fact that he received a substantial verdict. We do not agree. Errors of that nature are presumed to be prejudicial. Moreover, as a result of that evidence, plaintiff likely was prevented from recovering a $400 item and may have been prejudiced generally, in the eyes of the jury, because he attempted to recover an item which he later admitted he had not paid. We accordingly rule that the error was prejudicial to plaintiff.

Compare *Collier v. Roth,* 434 S.W.2d 502, 506 (Mo.1968) and *Hamilton v. Slover,* 440 S.W.2d 947, 957–958 (Mo.1969).

Defendant does not challenge the collateral source doctrine or that it is part of the law of this state. However, argument is made that the same is not applicable in the instant case because plaintiffs waived any protections they might have had thereunder when they placed in evidence, without limitation, an exhibit reflecting the presence of insurance. To sustain the argument that the "coverage" thus exposed by plaintiffs became a legitimate subject for unlimited cross-examination, defendant cites two cases: *Young v. Sinclair Refining Company,* 92 S.W.2d 995 (Mo.App.1936) and *Grantham v. Herod,* 320 S.W.2d 536 (Mo.1959).

In *Young,* a contract was introduced into evidence by the defendant-appellant without limitation as to the purpose for which it might be used. The contract contained certain stipulations requiring defendant-appellant to carry liability insurance. A good deal of direct examination regarding the contract was carried out by defense counsel. When plaintiff's counsel in his closing argument commented on the existence of liability insurance, defense counsel objected. The court, at page 1002, said:

> Certainly, such objection is not open to appellants where they introduced the contract in evidence without limitation as to the purposes for which it might be used. The rule which forbids the mention of liability insurance held by a party to a litigation has no application where the complaining party himself introduces such evidence. He thereby waives any immunity, to which he may or may not be entitled, against its mention or consideration. Whether it was competent or incompetent, the appellants cannot now complain, since they offered the contract in evidence themselves.

In *Grantham,* plaintiff offered as part of his case in chief for damages the repair bill for his automobile upon which appeared the notation: "Mail Copy to—Elliot Ins. Agency, Buckner, Mo." The defendant, upon cross-examination of the plaintiff, inquired into the identity and interest of the Elliot Insurance Agency, to which plaintiff made objection. The trial court required answer which disclosed that the Elliot Agency insured the plaintiff vehicle. Against the contention that the evidence of insurance

coverage was improperly received, it was held, at page 538, that:

Plaintiff placed the exhibit in evidence without limitation of any kind. He was, of course, subject to legitimate cross-examination concerning the complete exhibit. Cf. *Young v. Sinclair Refining Co.,* Mo.App., 92 S.W.2d 995, 1002 [10] [11, 12]. The fact, standing alone, however, that the notation to mail the repair bill to a named insurance agency was on the exhibit would not justify the disclosure, over proper objection, of the further information that plaintiff had his automobile insurance with that agent *if such was wholly irrelevant and immaterial under any view of the issues.* (Emphasis added.)

In *Young,* the court obviously concluded that an exhibit once admitted by a party was subject to unlimited examination by an adversary notwithstanding that disclosure of portions thereof might be violative of some accepted rule of law. As said therein, this was true whether the fact disclosed was "competent or incompetent." Such a rigid approach, we believe, places too much of a "cat and mouse" atmosphere into the trial of a cause and is not conducive to a fair resolution thereof. The court in *Grantham* undoubtedly had the same view when it proscribed a disclosure from an exhibit of facts "wholly irrelevant and immaterial under any view of the issues." Application of such a test in the instant case would sustain the trial court order granting a new trial, because damages allegedly caused by defendant were not to be mitigated by reason of payments to plaintiffs from a collateral source (*Kickham v. Carter,* supra) and insofar as defendant's liability was concerned such payments were "wholly irrelevant and immaterial." (*Grantham v. Herod,* supra).

■ Upon reflection, however, we are convinced that the "test" itself should be modified somewhat to cover an obvious possibility. What if the document or some other exhibit already in evidence is in fact "irrelevant" and "immaterial" but yet tends to reflect favorably on the party admitting the same, thus, necessarily being to the prejudice of the adversary? Certainly, the party so prejudiced must have an opportunity to make an effort to remove the same by cross-examination; and, it is for the trial court, in the first instance, to resolve whether or not such an undue advantage had been created.

■ Does such a modification of the "test" change the result in the instant case? We think not. Why plaintiffs' counsel had the hospital admission sheet brought to the attention of the jury without making some effort to cover or conceal the possibility that recovery for the medical bills had been had from an insurance company is unknown—under the facts shown, it was undoubtedly inadvertent. Nevertheless, to those having tried jury cases one truth would be evident, i. e., no advantage was created for plaintiffs by their divulging the same.

Under the test, as modified, admission of Exhibit 2 without limitation as to use did not provide a legitimate basis for cross-examination of plaintiff[s] concerning payments received from sources other than the defendant (tort-feasor). Granting a new trial to correct the erroneous ruling was proper.

The judgment is affirmed.

All concur.