JIM TOYNE, INC., Appellant,

v.

Phillip J. ADAMS, Jr., and Watson, Ess, Marshall & Enggas, Respondents.

No. WD 50433.

Missouri Court of Appeals, Western District.

Jan. 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1996.

P. Thomas Loughlin Jr., Kansas City, for appellant.

Walter R. Simpson, Kansas City, for respondents.

Before ELLIS, P.J., and HANNA and SPINDEN, JJ.

SPINDEN, Judge.

Jim Toyne, Inc., sued the law firm of Watson, Ess, Marshall & Enggas and one of its

partners, Phillip J. Adams, Jr.,[1] for malicious prosecution of a lawsuit against Toyne in 1988. That first lawsuit ended in 1992 when the plaintiff dismissed it. Toyne responded later that year with this action. The circuit court granted Adams' motion for a directed verdict at the close of Toyne's case on the ground that Toyne had not established a submissible case. We reverse and remand for a new trial.

Adams filed the underlying lawsuit on October 28, 1988, in federal court on behalf of Patricia Joanne Settles, widow of William Settles and Phillip Adams' mother-in-law. It accused Toyne, an independent insurance agency, and Golden Rule Insurance Company of breaching an insurance contract with William Settles and with contributing to his death on October 29, 1986, by causing confusion over his insurance coverage. This confusion, Settles averred, caused her husband to delay seeking medical treatment, and, but for the delay, he would not have died.

The confusion apparently resulted from William Settles' being terminated from his job at about the same time his employer was changing health insurance carriers. Although Toyne told him that he was covered under the new policy, someone at Golden Rule told him that he was not.

Patricia Settles filed a four-count suit against Golden Rule and Toyne as Golden Rule's agent. Because the action before us concerns only Toyne, we focus only on Settles' accusations against Toyne. Count I charged Toyne with terminating and breaching an insurance contract. Count II accused Toyne of "extreme and outrageous conduct" for telling William Settles that he was covered by a Golden Rule policy. Count III charged Toyne with falsely telling William Settles that his health insurance coverage had been terminated effective October 7, 1986. Count IV accused Toyne of negligently telling William Settles that his health insurance had been terminated on October 17, 1986; by terminating his health insurance without conferring with William Settles' employer; by telling William Settles on October 22, 1986, that his insurance was still in effect, but telling him on October 24, 1986, that it

had terminated; by providing extended coverage beyond what the law required without telling William Settles; and by terminating his health insurance before giving him written notice.

Toyne incurred legal fees of $2109.35 in defending this action before Settles dismissed it voluntarily. Toyne's insurer paid the legal fees.

Toyne sued Adams for malicious prosecution in 1992. After Toyne rested his case during trial on October 18, 1994, the circuit court granted Adams' motion for directed verdict on the ground that Toyne had presented "absolutely no evidence" establishing two essential elements of malicious prosecution: a lack of probable cause for the claim and malice.

"Probable cause for a civil suit means a reasonable belief in the facts alleged, plus a reasonable belief that the claim may be valid." *State ex rel. Police Retirement System of St. Louis v. Mummert,* 875 S.W.2d 553, 555 (Mo. banc 1994). Malice in this context is "a wrongful act done intentionally without just cause or excuse." *Proctor v. Stevens Employment Services, Inc.,* 712 S.W.2d 684, 686 (Mo. banc 1986).

Toyne called Phillip Adams as his witness and asked him why he had prepared the lawsuit against Toyne. Adams said that Toyne was included as a defendant because Toyne was an agent for Golden Rule and for William Settles' former employer, Long Motor Company. He said that his investigation before preparing the petition revealed that Toyne told William Settles that Long's policy with Golden Rule covered him while Golden Rule was telling him that it did not. Asked to explain his contention that Toyne had made false statements concerning coverage, Adams said that, in his opinion, William Settles did not have coverage until sometime in December 1986 after he threatened to sue Golden Rule, so Toyne's telling him that he did have coverage was false.

Toyne made a submissible case that Settles' lawsuit against Toyne prepared by

---

1. We refer to the defendants collectively as   Adams.

Adams was meritless.[2] Toyne did nothing to breach an insurance contract, as the petition's Count I alleged.[3] Toyne actually was powerless to terminate coverage. Nor does the record support Adams' contention that Toyne made false statements to William Settles. Long's policy with Golden Rule did cover Settles, just as Toyne said. The petition averred that "the defendants" (which would include Toyne) told Settles on October 7, 1986, that his coverage had been terminated, but Adams admitted that Toyne assured Settles that he was covered and that any confusion at Golden Rule could be corrected. The October 7 conversation, Adams recalled, was simply Toyne's repeating to Settles what someone at Golden Rule was saying. Toyne did not tell William Settles that his health insurance had been terminated on October 17, 1986, as the petition avers; Toyne was telling Settles that he did have coverage. Toyne did not terminate his health insurance without conferring with William Settles' employer, as the petition alleges; Toyne never terminated coverage.[4] Toyne told William Settles on October 22, 1986, that his insurance was still in effect, and, as it turned out, it was. Toyne did not tell William Settles on October 24, 1986, that his insurance coverage had terminated; Golden Rule did this in a notice received on that day by Settles. Contrary to the petition's allegation, Toyne did not provide extended coverage beyond what the law required without telling William Settles or terminate William Settles' health insurance before giving him written notice.

Toyne made a submissible case that nothing in the petition articulated a valid claim against Toyne. A jury could have reasonably concluded that the Settles' claim against

Toyne was so lacking in merit that Adams could not have had an honest and reasonable belief that the action should have been prosecuted against Toyne. *See Zahorsky v. Griffin, Dysart, Taylor, Penner and Lay, P.C.,* 690 S.W.2d 144, 151–52 (Mo.App.1985).

Toyne submitted ample evidence that the petition Adams prepared against Toyne lacked probable cause. The circuit court's conclusion that Toyne had presented "absolutely no evidence" to establish a lack of probable cause was error.

■ A jury can infer malice from the facts which establish a lack of probable cause. *Zahorsky,* 690 S.W.2d at 151. Adams' lawsuit against Toyne was so lacking in probable cause that a jury could have reasonably concluded that Adams persisted in the lawsuit for malicious reasons. The circuit court erred in concluding that Toyne had presented no evidence of malice.

Finally, the circuit court was concerned that Toyne's attorney fees and legal expenses incurred in defending Adams' action were paid by Toyne's insurer. The circuit court concluded that because all of Toyne's expenses in defending Settles' lawsuit were paid by Toyne's insurer, Toyne did not establish that he was damaged.

■ The circuit court noted the collateral source rule, but concluded for reasons not explained that it was "distinguishable from the normal Collateral Source Rule that we usually see." The collateral source rules provides that "a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for

2. We take the facts which follow from Toyne's evidence. We do not pass judgment on the evidence's accuracy, but, because we are reviewing a directed verdict, we presume all of Toyne's evidence to be true. *Zahorsky v. Griffin, Dysart, Taylor, Penner and Lay, P.C.,* 690 S.W.2d 144, 147–48 (Mo.App.1985).

3. Adams asserted that Toyne's inclusion in the breach of contract count was a typographical error. The prayer's specific reference to "each defendant" belies this contention, but, even if it had been a typographical error, we are puzzled by Adams' not dismissing Toyne from that count at trial.

4. Adams contended at trial that what he meant to plead was that Toyne never informed Long that Golden Rule was taking the position that Settles' coverage was terminated. We do not find any allegation which even approximates such a contention. Adams also explained that he made the allegation to keep Golden Rule from blaming its mistake on Toyne. Yet, Adams did not attempt to correct these allegations before trial. We understand that plaintiffs often lump allegations against multiple defendants without clearly delineating who did what, but we fail to find *any* valid, actionable wrongdoing alleged against Toyne.

the loss from a collateral source." *Collier v. Roth,* 434 S.W.2d 502, 506–07 (Mo.1968). *See Iseminger v. Holden,* 544 S.W.2d 550, 552–53 (Mo. banc 1976).

We do not share the circuit court's belief that the collateral source rule does not apply here. Toyne paid for the insurance coverage it received. Moreover, if anyone should benefit from a "windfall" in cases such as this, it should be the party wronged—not the tortfeasor. We reverse the circuit court's decision.

Adams argues that the collateral source rule applies only to payments by the tortfeasor to the plaintiff—not to insurance payments. This is simply wrong. The very case they cite, *Iseminger,* quotes with approval an earlier Supreme Court decision which said, "[T]he courts of this state have followed the general rule that *insurance payments* received by the plaintiff cannot ordinarily be set up by the wrongdoer in mitigation of damages." *Id.* at 552 (*quoting Kickham v. Carter,* 335 S.W.2d 83, 90 (Mo. 1960)(we added the emphasis)).

Finally, Adams asserts that Toyne did not have standing to assert this malicious prosecution action. Adams argues that the 1988 lawsuit wrongly named Jim Toyne Insurance, Inc., as one of the defendants.[5] Toyne answered by asserting that the court did not have personal jurisdiction over it because Settles had not named it as a party. Settles never amended her petition to correct Toyne's name or join Jim Toyne, Inc., as a party. The circuit court in this case allowed Toyne to amend its petition to substitute Jim Toyne, Inc., as plaintiff.

Adams acknowledges that Jim Toyne Insurance, Inc., was a misnomer. Adams asserts, without citing authority, that because Toyne challenged jurisdiction in the 1988 action and because Settles did not correct the misnomer, Toyne does not have standing to bring this action.

We do not review the issue. Adams did not cross appeal the circuit court's decision to permit Toyne to amend the misnomer. Of more significance is Adams' failure

to raise the point in the motion for directed verdict. Rule 72.01(a) says, "A motion for a directed verdict shall state the specific grounds therefor." We will not consider on appeal an issue not raised in the motion for directed verdict. *See Briggs v. King,* 714 S.W.2d 694, 696 (Mo.App.1986).

Because Toyne made a submissible case of malicious prosecution, we reverse the circuit court's directed verdict. We remand the case for a new trial.

All concur.

---

5. Toyne's corporate name actually is Jim Toyne, Inc.