William JOCKEL, Respondent,

v.

William ROBINSON, Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Appellant.

No. 56535.

Supreme Court of Missouri,
Division No. 1.

Sept. 11, 1972.

Glennon T. Moran, St. Louis, for respondent for respondent.

John C. Danforth, Atty. Gen., Jefferson City, Gene R. Spengel, Jr., St. Louis, for appellant.

SAMUEL E. SEMPLE, Special Judge.

This is an appeal by the State Treasurer of Missouri, Custodian of the "Second Injury Fund", from an award in a Workmen's Compensation claim against that fund. The award of the referee and affirmance thereof by the Industrial Commission was upheld by the Circuit Court.

The claimant, William Jockel, 64 years of age at the time of his accident on September 22, 1962, was employed as a sheet metal worker by the Gallagher-Kaiser Corporation. He had an 8th grade education acquired in the old country. On September 11, 1967, he filed an amended claim joining the State Treasurer as custodian of the Second Injury Fund claiming in substance to have permanent and partial disability existing prior to the accident.

The Referee entered an award on September 11, 1968, wherein he found that claimant sustained fifty per cent permanent partial disability to the right leg at the level of the hip for which he allowed 103.5 weeks of compensation and a twenty-week healing period to be paid by the employer-insurer. The referee further found that the employee had pre-existing disability of the back and left hip which combined with the injury of September 22, 1962, to render the employee permamently and totally disabled. For this the referee awarded claimant 176.5 weeks of compensation to be paid by the Second Injury Fund along with a life pension payable at the end of the first three hundred weeks of disability as provided by the Compensation Act. Appellant State Treasurer as custodian of Second Injury Fund filed an application for review of this award by the Industrial Commission. The Industrial Commission issued an order on February 28, 1969, directing the referee to take further evidence on the issue as to whether or not claimant was suffering with an industrial disability or disabilities and the nature and extent thereof prior to and at the time of the occurences of the last accident on September 22, 1962. Thereafter, on October 29, 1969, the referee heard additional evidence. On March 18, 1970, the Industrial Commission issued its final award affirming the award of the referee and making additional findings of fact. The circuit court upheld the final award.

On September 22, 1962, while working as a sheet metal worker for the Gallagher-Kaiser Corporation on a job at the Ford plant in St. Louis County, claimant William Jockel slipped and fell about six feet from a ladder, landing on the floor on both feet and broke his right ankle. He was taken to Firmin Desloge Hospital where he remained for about five and one-half weeks. A cast was applied to his ankle extending up to his knee which he wore for about two months. While in the hospital claimant's left hip started to bother him. During his stay in the hospital he developed chest pain, hemoptysis and generalized weakness. This was felt to be pulmonary emboli or pulmonary infarction. After claimant was released from the hospital he had to use a metal walker for about two months in order to get around. He then used crutches about six weeks and since then has used a cane for assistance

in getting about. Claimant has not worked since the accident because he is unable to stand on his leg and when he tries to walk his ankle gives out. He also has pain in the left hip and the leg gives out.

Claimant testified that he was injured at work on May 21, 1956, and as a result of these injuries he received a settlement on May 5, 1957, for a disability of 25 per cent of the body as a whole. He further stated that he went back to work within nine months to one year later assuming his full duties as a sheet metal worker. Claimant testified that after he went back to work following the 1956 accident he carried out the full duties of a sheet metal worker and at times worked as much as fourteen to sixteen hours per day for seven days a week just prior to his 1962 accident.

Dr. Robert Mueller testified at the original hearing that he examined claimant on May 17, 1968, and found that the condition of his right leg and ankle permanently and totally disabled claimant and that claimant had been unable to work since his 1962 accident because of the condition of his right ankle and left hip. He also stated that claimant was suffering the effects of an embolism of the right lung which was secondary to the fracture of his right leg in 1962. Dr. Mueller further testified that he had examined claimant on August 27, 1956 (after his accident on March 21, 1956), and found that claimant had a moderate degree of hypertrophic arthritis of his entire back, probably more advanced than the X-rays show; that he undoubtedly aggravated a pre-existing hypertrophic arthritis; that he had some 25 to 30 per cent permanent partial disability of the man as a whole due to aggravation of a pre-existing hypertrophic arthritis.

Dr. Robert Funsch testified that he treated claimant while he was confined in Firmin Desloge Hospital after his 1962 accident and later at his office. He treated claimant's right ankle and leg; that claimant never complained to him of any difficulty with his left hip. He was of the opinion that the 1962 accident produced 40 per cent disability to claimant's right ankle; that his other troubles and complaints were due to his age, arthritis, physique and circulatory status. Dr. Funsch stated that after the 1962 accident claimant was never able to compete on the active labor market but this wasn't all associated with his fractured ankle; that his inability to labor was due to a combination of factors of a man as a whole, his age, his arthritis, his cardiovascular status and also the fracture of the ankle in part. Dr. Funsch stated that he had no indication in any of his treatment or examination records in the hospital or office that claimant was suffering from any of these things prior to his accident in 1962, but did state without qualification that the circulatory conditions, the conditions of his arthritis, and other physical conditions were present prior to September 22, 1962.

On October 29, 1969, when the referee took additional evidence at the direction of the Industrial Commission, one Roy Taylor, business manager of Sheet Metal Workers Local 36, testified that he had known claimant about 15 years or more and saw him about 50 times between 1956 and 1962. He saw claimant about 20 times from 1960 to September 22, 1962, and during this period claimant's physical condition changed. He walked more slowly and with a limp and could not bend over. He got fired for not being able to physically do the work of a sheet metal worker on one occasion. He couldn't be sent out on just any job because of his physical limitations. There were things he could not do which prevented him from working on some jobs as a sheet metal worker. Several times he came to the union hall all stooped over. Taylor testified that it was possible for claimant to work 16 hours a day, seven days a week. It depends on what you are doing. Claimant was a fine mechanic. He had pride. He would say he could do things at times when it was observed that he could not do things physically. He is an honest man but has over confidence in his ability to work.

Dr. Robert Mueller gave additional testimony that, after examining Mr. Jockel in 1956, in his opinion he suffered a 25 to 30 per cent permanent partial disability of the man as a whole and he didn't believe that the man would be able to indulge in any work that would require strain on his back; that he still had a degree of disability in early September, 1962; that Jockel had a considerable degree of arthritis in his back in 1956 and has a moderate degree of hypertrophic arthritis in his back, probably more advanced than in 1956; that the condition could be expected to be worse six years later in 1962; that in his opinion it was not possible for Jockel to work in a trade of that kind (sheet metal worker) without being affected in his efficiency and that this loss of ability to work was present in early September, 1962.

■ Section 287.220 V.A.M.S. provides that in making an award against the Second Injury Fund it must be determined that at the time of claimant's most recent injury, he must have had a pre-existing permanent partial disability. It has been held that this pre-existing disability relates to disability to work and means industrial disability or loss of earning capacity rather than physical impairment as such. Wilhite v. Hurd (Mo.Sup.), 411 S.W.2d 72, 77. Such pre-existing or prior disability must be such as to partially disable the claimant from work or to impede his labors. Meilves v. Morris, Mo.Sup., 422 S.W.2d 335, 338.

In the review of awards of the Industrial Commission it is well established that "[N]either the circuit court nor the appellate courts may substitute their judgment for such a Final Award if, upon consideration of the whole record, including legitimate inferences, in the light most favorable to the award, the findings of the Commission are supported by substantial and competent evidence and are not contrary to the overwhelming weight of the evidence." Wilhite v. Hurd, supra, and cases therein cited.

Under this rule the previously stated evidence provides ample support for the Commission's final award.

■ Appellant contends that even though claimant when injured on September 22, 1962, had a pre-existing condition of arthritis in the back and left hip, circulatory problems in his right leg, and had been found to have 25 to 30 per cent permanent partial disability as a whole from a 1956 accident, nevertheless there was no evidence that any of these conditions disabled him in the performance of his occupation. Appellant further contends that by claimant's own testimony it was clearly established that he performed his work as a sheet metal worker and was suffering from no condition which interfered with his work up until he was injured on September 22, 1962.

The real thrust of appellant's contention is that because claimant himself stated that about 9 to 12 months after he suffered an injury in 1956 he went back to work, that his health was good, that he could do the work of a sheet metal worker, and that not long before the 1962 injury he did considerable overtime work, required a finding that he was not suffering from a physical handicap or disability which interfered with his earning power and demonstrated that he was not disabled industrially prior to the injury on September 22, 1962.

It is true that the Commission could have made findings other than those it did make but it did not do so, and the evidence, irrespective of conflict and contradiction that prior to September 22, 1962, claimant's physical condition had changed; he was not able to walk as well as he formerly did; he had slowed up; he couldn't bend over; he walked with a limp; he couldn't make the moves he had before; he was fired from one job because he couldn't physically do the work of a sheet metal worker; he could not be sent out on any job because of his physical limitations and disability; he was prevented from working on some jobs as a sheet metal worker be-

cause of his physical condition; his physical condition with respect to arthritis in his back and hip and the circulatory problem in his leg, together with his age, affected his efficiency to work as a sheet metal worker, and this loss of physical ability existed prior to September, 1962, constituted competent and substantial evidence to support the Commission in finding that claimant was prevented by physical disabilities from performing a part of the usual and customary duties of his occupation or any other for which he was reasonably suited so that his earning power was affected. He lost work, he was partially disabled industrially and that such was a pre-existing disability necessary to apply Second Injury Fund under Sec. 287.220 V.A.M.S.

■ Appellant next contends that there was not sufficient, competent and substantial evidence in the record to support the award of the Industrial Commission because claimant's own testimony established that he was not suffering from any industrial disability before the accident in September, 1962, which precluded any award against the Second Injury Fund. Appellant argues that the Industrial Commission ordered the referee after the original hearing, at which claimant testified, to take additional testimony on the issue of whether claimant was suffering from a pre-existing industrial disability before the September, 1962, accident. Thereafter the Commission affirmed the referee's award relying on the testimony of Roy Taylor, business manager of claimant's union, to make the finding of claimant's suffering a pre-existing industrial disability. Appellant contends that this finding of the Commission was improper as the testimony of Roy Taylor could not be considered, and cites the general principle that "a party's testimony on the stand as a witness may be of such a nature as to have the effect of a judicial admission which not only relieves the opponent from adducing evidence, but precludes the party himself from disputing it, either by his own testimony

or by other witnesses. Wigmore, Evidence, Sec. 2495a (3rd Ed.). Thus, if a party in full possession of his mental faculties testifies unequivocally and understandingly to a material fact peculiarly within his own personal knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the contrary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding. In the absence of such an explanation, the party may not have the benefit of any testimony which is contrary to his own testimony, whether given by himself * * * by his adversary's witnesses, * * * or by his own witnesses * * *. Where, however, the testimony of a party is not a positive statement of fact within his own knowledge, but is a mere estimate or opinion, it does not have the effect of a judicial admission." Smith v. Siercks (Mo. Sup.), 277 S.W.2d 521, 525; Burris v. Kansas City Public Service Co. (Mo.App.), 226 S.W.2d 743, 747.

This contention of appellant is not well taken. It is true that claimant testified on cross-examination that after his settlement in 1957 for his injuries in 1956 he worked steadily at full duties (sheet metal worker) until the date of his 1962 accident and injury; that he could go up and down ladders and use a hammer; that just prior to 1962 accident he could use a hammer; bend over and pick things off the ground; had no trouble walking or in his back; was a good strong man; had no trouble bending, breathing or chest pains; and no trouble with his left hip; and that just before the 1962 injury he worked considerable overtime work on occasion. This testimony of claimant, however, does not constitute a positive statement of fact within his own peculiar knowledge which negatives his right of action (that is, that he was a completely healthy man with no disabilities which impeded his labors or earning power prior to his 1962 injuries) but is a statement of his personal opinions and general

**232**

conclusions as to his physical condition and ability to perform work as a sheet metal worker and as such does not have the effect of a judicial admission.

Appellant contends that the Commission in making the award did not rely on competent and substantial evidence in that they only "quoted" from part of the testimony of Dr. Mueller and Dr. Funsch and these "quotations" or selections from the medical testimony were taken out of context; also that claimant's own theory of liability was that the accident and injury of September, 1962, was solely responsible for claimant's disability and it was only after the Commission ordered additional testimony to be taken that claimant changed his theory of liability to inject evidence of a pre-existing disability. Applying the rule previously stated herein as set out in Wilhite v. Hurd, supra, respecting the proper guide lines for this court to review the awards of the Commission, the summary of the evidence previously set out herein is sufficient to sustain the findings and award of the Commission.

Appellant's last contention is that the referee's award which was affirmed by the Industrial Commission found that the claimant's disability from the September, 1962, accident and injury combined with the previous disabilities of the back and left hip to render claimant permanently and totally disabled; that such finding was apparently based upon a presumption that since claimant received a settlement in 1957 for disability of 25 per cent of the body as a whole that the condition continued to the time of the 1962 injury; and that such a presumption was contrary to other evidence in the case. Apparently the gist of this contention is that the Commission made its findings and award based solely on such a presumption. This argument is totally without merit. This finding obviously was not based solely on a presumption of the continuation of a previous disability settlement. The Commission ordered additional testimony on this very issue and after receiving this additional testimony made its final findings and award.

There was competent and substantial evidence upon the whole record of this case to support the findings and award of the Industrial Commission and it follows that the judgment of the Circuit Court affirming the award of the Commission should in turn be affirmed by this court.

It is so ordered.

HOLMAN, P. J., and SEILER, J., concur.

BARDGETT, J., not sitting.