**Zelma BECK, Plaintiff-Appellant,**

v.

**EDISON BROTHERS STORES, INC., Defendant-Respondent.**

**No. 44360.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 26, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 1, 1983.

Application to Transfer Denied
Oct. 18, 1983.

Frank B. Green, St. Louis, for plaintiff-appellant.

Robert A. Wulff, St. Louis, for defendant-respondent.

STEWART, Presiding Judge.

This is an action for bodily injuries brought by plaintiff against Edison Brothers, Inc. Plaintiff, an employee of defendant, suffered a fractured hip as the result of a fall on the public sidewalk alongside of defendant's office building. Plaintiff is here on appeal from a judgment entered upon a jury verdict in favor of defendant.

We reverse and remand for a new trial.

Plaintiff contends that the trial court erred in (1) admitting evidence that Edison Brother's Stores Medical Plan had paid her medical bills and seventy percent of her wage loss because the indemnity for the loss came from a collateral source; (2) giving the instruction offered by defendant on contributory negligence because it failed to hypothesize disputed facts and assumed controverted facts.

The defendant contends that the issues raised by plaintiff need not be considered by this court because the court erred in failing to sustain respondent's motions for directed verdict because (1) plaintiff's only claim against defendant was under the Workers' Compensation Law; (2) there was no substantial evidence to sustain any pleaded theory of liability against defendant.

Plaintiff was employed by defendant in the supply department at its office building which occupies the eastern half of a city block in downtown St. Louis. The building is bounded by Washington Avenue on the north, St. Charles Street on the south and Fourth Street on the east. The west side of the building is bounded by another office building. There is a pedestrian entrance on Washington Avenue and another on St. Charles. The St. Charles entrance is closer to the west end of the building than to the

east end of the building. The driveway, garage entrance, loading and freight elevator are located to the west of the St. Charles Street pedestrian entrance. The St. Charles Street entrance is manned by a security guard and available for entrance at all times. The Washington Avenue entrance opens at 7:00 a.m.

December 29, 1976 was a bitter cold day. It had snowed the night before and there was ice beneath the snow. Plaintiff's neighbor drove her that morning. He let her out of his car on the west side of Fourth Street at St. Charles. Plaintiff alighted from the passenger side of the car and the neighbor drove away. Plaintiff walked to the west curb and crossed the west sidewalk of Fourth Street and headed west on the north side of St. Charles toward the St. Charles Street entrance to defendant's building. While walking along St. Charles Street she "hit ice and fell." There was not an "enormous" amount of snow but there was snow all over her coat after she had fallen. Plaintiff suffered a fractured right hip as a result of her fall.

Other facts essential to the determination of the issues raised will be developed as the issues are discussed.

We first consider defendant's contention that the trial court lacked subject matter jurisdiction because the plaintiff was an employee of defendant and under the facts of this case the only remedy available to plaintiff was a claim for workers compensation.

■ The basic question is whether the injury arose "out of and in the course of" the person's employment. Injuries sustained by an employee while going to or from work are not generally held to arise out of and in the course of employment. *Kammeyer v. Board of Education,* 393 S.W.2d 122, 130 (Mo.App.1965). An exception to this rule exists where the off-premises point is on the only route or the normal route that employees must take to get to their employment and there exists a special hazard, one to which the employee is exposed by reason of the employment, to which the general public is not subjected.

*Hunt v. Allis-Chalmers Manufacturing Co.,* 445 S.W.2d 400, 406 (Mo.App.1969).

■ In this case plaintiff was traversing a sidewalk in the City of St. Louis that was open and available to the general public. Plaintiff was subject to the same hazards to which the general public was exposed and she was not, by reason of her employment, exposed to a greater danger than the public at large. *Kammeyer v. Board of Education,* 393 S.W.2d 122, 131 (Mo.App.1965).

Defendant relies on *Hunt v. Allis-Chalmers, supra.* A case in which the employer encouraged proper use of a parking lot a part of which was made available to its employee by the owner of the lot. To get to the employer's plant from the parking lot employees were required to cross railroad tracks. The claimant's decedent in that case was killed by a train while crossing the tracks on his way to work. The court in that case said "as such his status was different from members of the public and 'involve(d) peculiar and abnormal exposure to a common peril.'" 445 S.W.2d at 408.

The trial court had jurisdiction under the circumstances of this case.

Defendant next contends that there was insufficient evidence to support plaintiff's theory of the case. Defendant's point relied on fails to specify in what regard the evidence was insufficient.

Plaintiff submitted her case on the theory that defendant who had undertaken to clear the ice and snow from the sidewalks abutting its building permitted an area of ice and snow to remain on the sidewalk on the St. Charles Street side of the building.

From defendant's argument we assume that it contends that plaintiff was conclusively bound by her testimony that no work had been done on the sidewalk on St. Charles Street and thus she could not claim that defendant had been negligent in the removal of snow and ice.

■ If a party testifies unequivocally and understandingly to a material fact peculiarly within her own knowledge, which testimony negates her right of action, the

effect is that of a judicial admission which may not be contradicted by any other evidence. Such a party would have to give some reasonable explanation of her previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding to redeem her cause. The principle does not apply to statements of mere opinion or estimate. *Jockel v. Robinson*, 484 S.W.2d 227, 231 (Mo.1972).

Plaintiff testified that she was picking her way along St. Charles Street and "hit some ice" and fell down. There was "not an enormous amount of snow" there but there was snow on her coat after she fell. She could not say whether any work had been done in that area. She could not say one way or the other whether a path had been cleared. There was evidence in plaintiff's case that there were men clearing the sidewalk at Fourth and Washington and the security guard said that the maintenance men had worked on the sidewalk all around the building.

■ We cannot say that plaintiff's testimony precluded the submission of her theory of the case. *Jockel v. Robinson*, 484 S.W.2d at 232.

Other issues argued but not raised in the point relied on will not be addressed.

■ We consider plaintiff's contentions in inverse order. It is contended by plaintiff that the court erred in giving the contributory negligence instruction that was submitted by defendant, because it assumes controverted issues of fact. Specifically that there was a safe alternate route for plaintiff to travel.

The instruction reads as follows:

Your verdict must be for defendant if you believe:

First, plaintiff knew or in the exercise of ordinary care could have known of the cleared sidewalk available for her use, and

Second, plaintiff chose the uncleared sidewalk when a cleared sidewalk was available for her use, and

Third, plaintiff was thereby negligent, and

Fourth, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

The term 'negligent' or 'negligence' as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

An instruction that assumes facts in issue are as improper under MAI as they were before MAI. The general principles were reiterated in *Welch v. Hyatt*, 578 S.W.2d 905 (Mo. banc 1979). In *Welch* the court in a 4 to 3 opinion upheld a contributory negligence instruction which apparently did not require a finding that plaintiff was making a left turn as a prerequisite to displaying a signal. The instruction followed MAI 17.06 precisely. In holding that the instruction was not prejudicially erroneous the court however admonished, "that in the future when a turn is a controverted and disputed fact MAI 17.06 should require a finding that (1) there was a turn and (2) that there was a failure to signal an intention to turn."

In the case at bar although defendant pleaded contributory negligence generally it based its affirmative defense upon the theory that plaintiff had an alternate route to her destination that was safe but she chose the dangerous way. *Sanders v. Carl Berry Oil Co.*, 359 S.W.2d 769 (Mo.1962). The ultimate fact issue in this case is whether there was an alternate, safe way that plaintiff could use to get to her destination, her place of employment. If that issue is controverted it follows that the issue must be submitted to the jury. *Welsh v. Hyatt*, 578 S.W.2d at 913–14. Defendant contends that this issue was not controverted.

Defendant argues that the sidewalk on Washington Avenue had been clear and was safe for use of pedestrians. Plaintiff testified that she did not know whether the sidewalk on Washington Avenue had been cleared because she did not see that sidewalk. Mr. Helms, a security guard who

was supplied to defendant by a security company, testified on behalf of plaintiff. Mr. Helms testified with respect to plaintiff's position on the sidewalk after she fell and as to the condition of the sidewalk at that time. He testified that when he came to work about 6:00 a.m. the sidewalk had been cleared "all the way around the building." He did not know where the snow removal crew was at the time plaintiff fell. Plaintiff testified that when she started to walk on the sidewalk at Fourth Street and St. Charles Street she saw men working on snow removal at Fourth Street and Washington Avenue. From the later testimony it could be inferred that the way from Fourth and St. Charles over the sidewalks on Fourth Street and on Washington Avenue to defendant's Washington Avenue entrance had not been cleared but was in the process of being cleared. It follows that there was a factual issue as to whether there was an alternate, safe way for plaintiff to get to work.

There was also testimony to the effect that the door into defendant's premises on the Washington Avenue side of the building did not open until 7:00 a.m. and there was disputed evidence from which a jury could have found plaintiff arrived at Fourth Street and St. Charles Street at 6:50 a.m. At that time the only entrance available to her was the St. Charles Street door. There was an issue as to whether there was a safe way plaintiff could have reached her destination. The questioned instruction did not require the jury to find that there was a safe way but told the jury that there was a "cleared sidewalk available for her use" and only required a finding that plaintiff "knew or in the exercise of ordinary care could have known" that the sidewalk was clear. The instruction was prejudicially erroneous. *Welsh v. Hyatt*, 578 S.W.2d at 913–14.

Because this case must be retried we will review another issue raised by plaintiff that is likely to arise upon retrial. Plaintiff claims that the court erred in admitting evidence that the Edison Brothers Store's Medical Plan had paid her medical bills and seventy percent of her lost wages. Plaintiff urges that this evidence was irrelevant and immaterial and it was erroneous to admit the evidence for purposes of impeachment when the evidence was introduced into evidence because plaintiff had not testified therefore there was no basis for impeachment, and because it violated the collateral source doctrine which prevents an alleged tortfeasor from reducing its liability by proving that payments were made to plaintiff from a collateral source. Violation of the doctrine is presumed prejudicial error. *Kickham v. Carter*, 335 S.W.2d 83, 90 (Mo.1960).

Plaintiff's first witness in the case was Mr. Borus, defendant's vice president of purchasing who testified on cross-examination by defendant's counsel that $14,800 in medical expenses had been paid by the "company" and that plaintiff was also paid 70% of her lost wages.

Defendant's counsel stated that this testimony was offered to attack plaintiff's credibility. Defendant did not in its pleadings seek a setoff of the amounts paid and acknowledged that it was not seeking a setoff. At the time this evidence was offered plaintiff had not testified, she had not been asked about the payment of medical expenses or her wage loss. Before a witness can be impeached the witness must be asked the specific question that elicited the statement that is sought to be discredited. *State v. Haynes*, 482 S.W.2d 444, 447 (Mo. 1972). Plaintiff on direct examination testified that she had incurred medical expenses and had lost time from her employment. On cross-examination she was asked about the payment of disability pay and of hospitalization and she testified that such payments had been made by the medical plan. Neither the testimony of Mr. Borus nor the testimony of Ms. Kelly, who testified in defendant's case and who had drawn the vouchers served to impeach any statement made by plaintiff. It was therefore inadmissible. 482 S.W.2d at 448.

In our opinion the evidence was also inadmissible because the payments came from a collateral source. When plaintiff was employed she received a booklet setting out

the benefits due to employees in addition to wages. These included a life insurance plan to which all employees contributed, and a medical, health plan that includes hospitalization, medical and sick leave, or disability benefits. As stated above the facts with respect to these benefits were first brought into the case in cross-examination of defendant's vice president of purchasing, Mr. Borus. Mr. Borus had been called by plaintiff with respect to the defendant's procedures for snow removal. It was on cross-examination that defendant elicited the testimony with respect to the payments. On redirect examination he testified that defendant had a health insurance plan. On further examination he testified that the health plans were not within his department and he did not know whether the company was self-insured or whether there was an insurance carrier.

It was developed that employees who worked in the office and those who were employed in the stores operated by defendant made monetary contributions to the plan. Other employees, including plaintiff who was classified as a supply-warehouse employee, made no monetary contributions. The contributions of the office and store employees made up 48 percent of the contributions to the plan. The defendant contributed the remaining 52 percent.

Ms. Kelly, the administrative assistant to the vice president, insurance, testified that the vouchers for the payment of medical expense and sick leave were not drawn upon the defendant but upon the Edison Brothers Store's Medical Plan. She further testified the plan was a "trust set up" but she was not familiar with the trust; that Mr. Orlando, the vice president, insurance, was the administrator of the plan and would know about it. Neither Mr. Orlando nor any one who would be able to explain the true nature of the medical plan was called to testify.

Although defendant, who introduced the evidence giving rise to this issue, did not fully develop the facts concerning the plan, we believe that there was sufficient facts available to permit us to rule.

It is generally held that a wrongdoer may not be benefited by collateral payments made to the person he has wronged. *Iseminger v. Holden,* 544 S.W.2d 550, 552 (Mo. banc 1976). The question of whether medical benefits and disability payments covering lost wages are collateral payments when made under the circumstances in this case has not been directly ruled upon by the courts of this state.

Defendant contends that *Hamilton v. Slover,* 440 S.W.2d 947 (Mo.1969) is controlling here. In *Hamilton v. Slover,* plaintiff, a passenger in defendant's automobile, sued defendant for injuries suffered in a collision. Defendant's automobile liability policy contained a medical payment provision. The court accepted the reasoning in *Yarrington v. Thornburg,* 205 A.2d 1, 2–3 (Del. 1964) which held that the tortfeasor's "purchase of the insurance and payment of premiums were the sole cause for the existence of the fund and we are unable to perceive any valid reason why he should not receive credit for the fund thus created by him."

We believe that this case presents an entirely different situation. The present case is analogous to FELA cases where the employee receives medical benefits by reason of the contract of employment. The medical benefits and the disability payment for lost wages received by plaintiff here were not gratuities or voluntary payments made because plaintiff was injured upon defendant's premises. She would have been entitled to the payments wherever she had been injured. The fund was not created to indemnify defendant against liability such as was alleged in this case. The benefits were fringe benefits given in part consideration for services rendered by the employee to the employer. See *Haughton v. Blackships, Inc.,* 462 F.2d 788, 791 (5th Cir.1972); *United States v. Price,* 288 F.2d 448, 450 (4th Cir.1961); *Patterson v. Norfolk and Western Railway Co.,* 489 F.2d 303, 308 (6th Cir.1973). We hold that under the circumstances of this case the collateral source rule applied. The questioned evidence is inadmissible.

For the reasons stated herein the cause is reversed and remanded for a new trial.

STEPHAN and CRANDALL, JJ., concur.