**Betty J. DUNCAN, Petitioner-Appellant,**

v.

**Lloyd K. DUNCAN, Respondent.**

**No. 46990.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 5, 1985.

children born of the marriage were emancipated. We dismiss the appeal and remand for further proceedings.

On appeal wife complains that the trial court erred in: (1) entering a decree that is so indefinite and uncertain as to be unenforceable; (2) failing to determine the status of and dispose of all of the marital property; (3) dividing the marital property so as to be unduly and heavily weighed in favor of the respondent husband; and (4) limiting the duration of maintenance.

Husband was in construction related businesses including grading, construction and a "Reddi Mix" concrete business. These businesses had each been incorporated as Lloyd K. Duncan, Inc., Duncan Bridge, Duncan Grading and 76 Materials Company. The charters of these corporations were forfeited January 1, 1979, for failure to pay the corporate franchise tax. Husband has continued to operate the businesses.

Husband testified that he also owned a half interest in a corporation referred to as Meramec Materials. There was some confusion on the interests involved in the latter corporation. Mr. Michael Harmon testified that he held all of the stock in Meramec Materials; that stock was authorized for husband but not paid for. Money was borrowed for Meramec from the bank by Harmon with husband and wife in this case as guarantors. There is an indication of transactions between Meramec and 76 Materials but the question of who owes who what was not clarified.

From the evidence in the case husband and wife had only nominal income. When husband required funds for his personal needs he took money from the various companies. When asked whether he could afford to pay maintenance of a certain sum he replied that it all depended on how hard he wanted to work. Wife had worked in the business for some period of time. During this time she obtained two checks for $500 each identified as exhibits A and B in addition to her salary. When this subject arose there were two other exhibits intro-

David L. Hoven, Spalding & Hoven, Pacific, for petitioner-appellant.

John W. Thiebes, Pacific, for respondent.

STEWART, Judge.

The trial court dissolved the 28 year marriage of the parties, made division of marital property, set aside separate property and made an award of maintenance to wife over a period of three years. The three

duced into evidence but there was no explanation and the exhibits are not before us. Just prior to trial wife worked part time for a fast food restaurant at $3.35 per hour.

There was evidence of misconduct on the part of each of the parties.

The court granted wife maintenance of $150 per week for two years and $100 per week for one year. It awarded her marital property consisting of a car valued at $1500, household furnishings of $2330, $10,000 as her share of the business properties and one half of the net proceeds of the marital home. She was also awarded $1500 attorney's fee and allowed to live in the marital home until it is sold.

Husband was awarded $1860 in household furnishings, all of the business assets totalling $607,375 which included real property worth $200,000. The court also awarded husband one half interest in the marital home and ordered husband to pay the debts in the sum of $397,529.84 subject to modification as discussed hereafter. Costs were assessed against husband.

■ We must consider first the question of our jurisdiction. The parties do not question the determination that the marriage is irretrievably broken. We consider the marriage to be dissolved as of the date of the decree. *Brown v. Brown*, 537 S.W.2d 434, 438 (Mo.App.1976); *In re Marriage of Wineland*, 609 S.W.2d 464, 467 (Mo.App.1980). The issue is whether there was a failure to determine the status of husband's interest in Meramec Materials and whether there was a failure to make a proper disposition of that interest.

Husband clearly and unequivocally testified that he had a one-half interest in Meramec Materials. Wife also testified that husband had an interest in the company but did not know the extent of the interest. Michael Harmon who was called as a witness by husband, testified that he was the sole stockholder of Meramec Materials; that stock was authorized for husband but it wasn't "paid for;" that the account is carried on the books of the company as a receivable; that he was not certain as to what husband owed him for material or

what Meramec owed husband for work husband did for the company. He also testified that money for the corporation was borrowed by him with his home as security and the bank had husband and wife sign "as personal." Equipment of the husband and wife is being used by Meramec in its business.

■ Husband did not attempt to explain his testimony as to his interest in Meramec. When a party in full possession of his mental faculties testifies unequivocally and understandingly to a material fact peculiarly within his own knowledge it has the effect of a judicial admission. He is precluded from relying on any testimony to the contrary unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding. Absent such an explanation the party may not have the benefit of any testimony to the contrary irrespective of the source. *Jockel v. Robinson*, 484 S.W.2d 227, 231 (Mo.1972).

■ Based upon husband's testimony he has a one-half interest in a going business. The value of the business has not been established and that interest has not been distributed. It follows that the jurisdiction of the trial court has not been exhausted and this appeal must be dismissed. *Anspach v. Anspach*, 557 S.W.2d 3, 6 (Mo. App.1977).

■ Wife contends that paragraph 10 of the decree is so indefinite and uncertain as to be unenforceable. We shall discuss this issue because it is jurisdictional in nature.

To be fully understood paragraph 10 and paragraph 11 must be read together. The essential portions of those paragraphs read as follows:

10. The Court finds that the following are marital debts and orders them paid by the Respondent, who shall hold the Petitioner harmless therefrom:

| CREDITOR | BALANCE |
| --- | --- |
| Bank of Washington | $ 57,363.70 |
| Bank of Washington | 20,124.08 |
| County of St. Louis | 10,655.57 |

| CREDITOR | BALANCE |
|---|---|
| Kenton & Mildred Duncan | 25,000.00 |
| Simpson Sand & Gravel | 15,000.00 |
| CIT Corporation | 80,000.00 |
| Internal Revenue Service | 3,759.52 |
| Erb Equipment Company | 1,500.00 |
| Winter Brothers | 6,000.00 |
| Mr. & Mrs. Gus Mueller | 4,890.00 |
| St. Louis County Bank | 173,236.97 |

Respondent shall not, however, be required to pay that portion of the debt to the St. Louis County Bank which represents a second deed of trust on the marital home. The deeds of trust on the marital home shall be governed by paragraph 11, infra. However, if no definite and certain portion of the sum of money owed to the St. Louis County Bank is secured by the marital home with the second deed of trust, then all of that debt to the bank is ordered to be paid by Respondent.

11. The Court also finds that the parties are possessed of marital property consisting of the marital home in Jefferson County, the legal description of which is follows:

All of Lots Thirteen (13) and Eighteen (18) of United States Survey 1932, Township Forty-Three (43), Range Three (3) East.

The fair market value of the home is $150,000.00. The marital home is ordered sold at a price agreeable to the parties. Until it is sold the Respondent shall make all payments on the first and second deeds of trust, as well as pay all taxes, insurance and maintenance. In the event of default by Respondent, the Petitioner shall have the right to make such payments. Upon the sale of the marital home, there shall be deducted from the proceeds: (a) the costs of the sale, (b) the balance due on the two deeds of trust for the marital home, and (c) one half of the payments made after the date of this decree on the deeds of trust, taxes, insurance and reasonable costs of maintenance, which shall be paid over to the party who has made such payments. The remainder of the proceeds, if any,

shall be evenly divided between Petitioner and Respondent.

The tactics of the parties in this case made it most difficult for the trial court to formulate a judgment. The case was tried on July 22, 1983. At the close of the evidence the paucity of information led the court to order each of the parties to prepare and file an affidavit that would list all of the assets and liabilities of the parties indicating who is liable for the debts. It was agreed that the affidavits would be considered evidence. There was a great disparity in the assets listed in the affidavits. Wife's affidavit listed accounts receivable that were not listed in husband's affidavit. Wife's list of debts contained the names of the obligors. Husband listed debts but not the obligors. After the affidavits were filed the case was reopened for further evidence but little was added that would clarify the financial position of the parties.

In considering the point at issue the debt involved is $173,236.97 owed to St. Louis County Bank. The only evidence as to the obligors on this debt is found in wife's affidavit. The obligors listed are Lloyd K. Duncan, Inc., Lloyd K. Duncan and Betty J. Duncan. Collateral security for the debt is listed as a first deed of trust on commercial property in Pacific, Missouri and a second deed of trust on the marital home which is on 88 acres in Jefferson County. We could assume that the obligation is represented by a note or notes. The date and terms of the notes or the terms of the deeds of trust are not in evidence. The testimony of the accountant on this issue is so indefinite as to be valueless. He testified the amount of the debt was $170,000.00 with a second deed of trust on the residence; he said nothing about a first deed of trust. He "believed" both parties were obligated but didn't know if a corporation was also liable. He testified he had not seen the legal papers with respect to all of the obligations.

The critical portion of the decree is the last portion of paragraph 10 which provides that husband is not to pay any portion of

the deed of trust to St. Louis County Bank which represents a second deed of trust on the family home. However, if there is no definite and certain portion owed to the bank respecting the second deed of trust then husband is to pay the entire debt. As we read this portion of the decree husband is required to pay all debts attributable to the businesses. Both parties are liable on their personal obligations including any portion of the debt to St. Louis County Bank in the sum of $173,236.97 allocated to the marital home property. If there is no portion of the debt specifically allocated to the second deed of trust husband would be liable for the entire debt.

It would appear that the obligation is a business debt of the corporation if the charter had not been forfeited when the debt was incurred or at least the obligation of the business operated by husband, with the added security of the individual liability of husband and wife.

As the record stands there is no allocation of the security. If, however, the parties were to sell the residential property the obligation secured by the first deed of trust on that property would have to be paid off and the first deed of trust released. It would also be necessary to obtain the release of the second deed of trust. The amount necessary to obtain the release of the second deed of trust is dependent upon the bank. The collateral security and any part of it is liable for the entire debt. After the first deed of trust on the home has been released the bank could require that the balance of the proceeds of the sale be applied to the debt as a condition to release the second deed of trust. The result would be that wife would receive nothing and over $100,000.00 of husband's business debts would be discharged.

Respondent argues that the intent of the trial court is to require the wife to use her portion of the proceeds of the sale of the residential property to pay the debt. This would in all probability be the result although we do not believe that this was the intention of the trial court.

It was undoubtedly the intention of the court to require husband to pay the debts incurred in the businesses. We question the disparity of the distribution of marital assets notwithstanding the provision under consideration especially when it is considered that as to creditors, wife is still liable for the business debts. According to her affidavit she is an obligor on all of the debts. There is no evidence by husband to the contrary.

To enforce this portion of the decree it would be necessary to develop additional evidence, possible interpretation of that evidence and an interpretation of the decree in the light of these developments. The decree is so indefinite and uncertain as to render the decree void. *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 273 (Mo.App. 1979).

The information necessary to assist the trial court in reaching a conclusion with respect to the issues presented should be readily accessible to the parties. Evidence of the obligations and valuation of the assets should be before the court in the records of the banks, including financial statements presented to the banks, the articles of incorporation, the minutes and books and other records of Meramec should also be readily available.

The court's obvious diligence in determining the valuation of those items presented to it is to be commended but as said before the court cannot gather the evidence and try the case for the parties; it requires the cooperation of the parties. *Anspach v. Anspach*, 557 S.W.2d at 6.

It is with considerable reluctance that we must dismiss this appeal and remand the cause for further proceedings at which time the court may also reconsider all other issues in light of this opinion and the evidence which will be produced upon remand.

SNYDER, P.J., and DONALD MANFORD, Special Judge, concur.